# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **CHERYL HILL, ET AL** | **\*CIVIL ACTION NO. 07-1607** |
| **VS.** | **\*JUDGE WALTER** |
| **SHERIFFS OFFICE IBERIA PARISH, ET AL** | **\*MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

Pending before the Court is the Motion for Summary Judgment filed by defendants, former Sheriff Sid Hebert (the "Sheriff"), and Jeff Schmidt, Bret Broussard, Erin Ashley Irby, Jeff Matthews, Darren Bourque, Matthew Smith, Andres Gonzales, Scott Clostio, Stephen Hill, Jeremy Hatley, Joseph Nissen, and Latonya Perry (the "Deputies"), on June 20, 2008. [rec. doc. 43]. Plaintiffs have filed opposition [rec. doc. 91]. The Deputies filed a reply to the opposition. [rec. doc. 97]. In response, plaintiffs filed a sur-rebuttal brief. [rec. doc. 102]. Oral argument was held on November 19, 2008, after which the motion was taken under advisement. [rec. doc. 99]. Based on the following reasons, it is recommended that the motion be **GRANTED.**

### Background

On September 24, 2006, the Sugar Cane Festival was held in New Iberia, Louisiana. That evening, a large group of 100 or more celebrants was listening to a disc jockey set-up on the porch of Gator's Barbeque stand near the corner of Louisiana

Highway 675 (Hopkins Street) and Robertson Street. Within about a two-hour period, the Iberia Parish Sheriff's Department received numerous telephone calls from people complaining about loud noise, blocked traffic and speeding motorcycles on Hopkins Street. No permit had been obtained to block Hopkins Street.

By approximately 8:09 p.m., seven deputies had arrived on the scene. Following the instructions of Sgt. Jeffrey Schmidt, Deputy Bret Broussard used the public address speaker on his patrol unit to warn the crowd to clear the street or tear gas would be deployed. Deputy Broussard made this announcement three times, with one-minute intervals between each.[1] After receiving no discernible response, Sgt. Schmidt and Deputy Broussard each tossed a canister of gas into the crowd.

Once the gas was deployed, people within the crowd started throwing beer bottles and other debris at the deputies. In response, Sgt. Schmidt and Deputy Broussard each fired an additional canister of gas into the crowd with gas guns, then retreated to their vehicles. Still, people continued throwing bottles and rocks at the deputies and continued to move towards them. From behind their squad cars, the deputies deployed three additional canisters of gas by hand and one by gun.

---

[1] Plaintiffs dispute that a warning was given. However, in the Affidavit of Allen Mitchell submitted by plaintiffs, Mitchell admitted that "one of the deputies told several women walking up Robertson Street towards Hopkins that they were going to start using tear gas . . . ." [rec. doc. 82, Exhibits 4, 5]. For those reasons set out below, this factual dispute does not affect the qualified immunity analysis.

Afterwards, crowd members started surrounding the deputies, threatening them, yelling epithets, and throwing bottles. The deputies then got into their units and retreated to North Robertson Street to regroup. Eventually, the deputies returned to Hopkins and Robertson streets, and observed that several police units had been hit by bottles thrown by the crowd. The deputies deployed a few more canisters, and the crowd finally dispersed so that traffic could resume using the street. The deputies did not arrest anyone during the incident.

On September 24, 2007, plaintiffs filed this civil rights action for damages allegedly caused as a result of the incident. Plaintiffs' claims are asserted under 42 U.S.C. § 1983 and Louisiana state law. They seek general and special compensatory damages, punitive/exemplary damages, reasonable attorney's fees, and costs.

By the instant Motion, the Sheriff and the Deputies contend that they are entitled to qualified immunity.

## **Summary Judgment Standard**

Fed.R.Civ.Proc. Rule 56(e) provides, in pertinent part, as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

This Motion is properly made and supported. Thus, plaintiffs may not rest on their allegations or denials in their pleadings, but rather must go beyond the pleadings and

designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986). However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Moreover, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552.

## Analysis of Claims

**Qualified Immunity**

First, defendants argue that to the extent that Sheriff Hebert and the Deputies were sued in their individual capacities, they are entitled to qualified immunity from civil damages.

Government officials are entitled to qualified immunity for civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In other words, qualified immunity is available when a reasonable official would not have known that his actions would violate a constitutional right that was clearly established at the time of the incident. *Id.* at 2738. Qualified immunity is not merely a defense to liability but an immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995).

Claims of qualified immunity require a two-step analysis. First, the court must determine whether the plaintiff has alleged that "the officer's conduct violated a constitutional right." *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003). If there is no constitutional violation, the court's inquiry ends. *Id.* However, if "the allegations could make out a constitutional violation, the court must ask whether the right was clearly established – that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)).

For summary judgment purposes, the defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*.

Here, plaintiffs have alleged violations of the First and Fourth Amendments of the Constitution. Specifically, they assert that defendants violated their First Amendment right of free assembly and their Fourth Amendment right to be free from excessive force. [rec. doc. 5, ¶¶ XI, XIX].

**The First Amendment**

It is well established that a State or municipality has the right to regulate the use of city streets and other facilities to assure the safety and convenience of the people in their use and

the concomitant right of the people of free speech and assembly. *Cox v. State of La.*, 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed. 2d 471 (1965). Louisiana law prohibits people from hindering traffic by blocking public streets. LA. REV. STAT. ANN. § 14:100.1 (2004). Concomitantly, the First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others. *See Frye v. Police Dept. of Kansas City, Missouri*, 260 F.Supp.2d 796, 799 (W.D. Mo. 2003); *Ellsworth v. City of Lansing*, 205 F.3d 1340 (6th Cir. Feb. 10, 2000) (picketers were subject to state and local laws designed to prohibit picketers from blocking ingress to and egress from private property).

At the hearing, no one disputed that the crowds needed to be dispersed. The Sheriff's Department had received several telephone calls on the evening September 24, 2006, regarding the bottle-necked traffic and unsafe driving along Hopkins Street. [rec. doc. 43, Exhibit A, audio recording]. The audio recording from 911 taped that evening indicates that citizens were stuck in traffic and intimidated by the boisterous crowd. Under these circumstances, the Sheriff and the Deputies acted reasonably in trying to clear the streets for the safety of residents. If the blockage of the street was not protected, then plaintiffs' First Amendment rights simply could not have been infringed by a release of tear gas designed to clear the street. *Ellsworth* at *3. Thus, there was no First Amendment violation in this case.

**The Fourth Amendment**

As to the Fourth Amendment claim, the record reflects that the Deputies had warned the crowd to disperse, or tear gas would be deployed. [rec. doc. 43, Exhibit 3, ¶¶ 6, 7]. Despite

6

these warnings, the people remained in place and continued to block the street. [rec. doc. 43, Exhibit 3, ¶ 7]. Accordingly, Sgt. Schmidt and Deputy Broussard each deployed a tear gas canister. [rec. doc. 43, Exhibit 3, ¶ 8].

In response, the crowd threw rocks and bottles at them. [rec. doc. 43, Exhibit 3, ¶¶ 8, 9]. Sgt. Schmidt and Deputy Broussard each fired an additional cannister of gas, but the crowd continued throw things at them. [rec. doc. 43, Exhibit 3, ¶ 9]. Thereafter, the officers were forced to take cover behind their patrol units. Some members of the crowd then proceeded towards them in an aggressive manner. Deputy Broussard ordered them to stop, but the crowd continued to advance. Accordingly, the deputies deployed additional tear gas.

The deputies eventually relocated to the Corner of Hopkins St. and Babb Alley. [rec. doc. 43, Exhibit 3, ¶ 10]. Later, they returned to the intersection of Hopkins and Robertson streets. After deploying additional tear gas canisters, the deputies were finally able to clear the streets.

In light of these facts, the undersigned finds that the deputies' actions were reasonable. The numerous calls from the area residents reflect that many were concerned for their safety and the safety of others. Given the crowd's refusal to adhere to the officers' warnings, the Deputies acted within their authority to disperse the crowd with tear gas in order to unblock the streets and remove the hazards to others.[2]

---

[2] Although plaintiffs dispute that the deputies gave warnings first, officers do not necessarily violate the Constitution by using gas without a warning. *See United Steelworkers of America v. Milstead*, 705 F.Supp. 1426, 1437 (D. Ariz. 1988) (officer's failure to give warning before throwing tear gas into a liquor store did not constitute excessive force under Fourteenth Amendment).

The plaintiffs deny that the deputies gave warnings before employing the tear gas on the crowd. The plaintiffs further argue that such a warning was constitutionally required before gas could be deployed. However, the plaintiffs fail to cite this court to any authority in support of their argument that such a warning is constitutionally required.

Rather, the plaintiffs rely on *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125 (9th Cir. 2002). The facts in this case are in no way even similar to the facts present in *Humboldt*. In *Humboldt*, the police were faced with a small group of nonviolent protesters who were completely within the control of the police. Here, the deputies were faced with a large crowd, some of whom were admittedly violent, and none of whom were under police control.

The Fourth Amendment permits law enforcement officers to use only that force which is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight. The test of "reasonableness" must make allowance for the fact that the police are often forced to make immediate judgments, in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation. *Id.* at 396-97. *See also, Tatum v. City of Texarkana*, 47 F.3d 427 (5th Cir. 1995).

The situation faced by the deputies here was clearly "tense, uncertain and rapidly evolving". The deputies' use of the tear gas was measured, and dependent in large part on the activities of the crowd, which was becoming increasingly more violent. From the perspective of the deputies at the scene, with due allowance made for the immediate judgments which the deputies were called upon to make, the use of the tear gas was "objectively reasonable" under the circumstances which the police faced. Under these circumstances, the police were not required to give a warning before using tear gas on the increasingly violent crowd, although they claim that they did, in fact, do so. Thus, I find that the Deputies are entitled to qualified immunity.

Accordingly, it is recommended that the motion for summary judgment on this issue be **GRANTED**, and the claims against the Sheriff and the Deputies in their individual capacities be **DISMISSED WITH PREJUDICE**.

**Official Capacity Claim**

Defendants' next argument is that plaintiffs failed to show that Hebert is liable in his official capacity as Sheriff.

Well-settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-38, 56 L.Ed.2d 611 (1978)). Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation;

or (ii) implement unconstitutional policies that causally result in plaintiff's injury. *Id*. (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987).

Here, plaintiffs fail to show any direct personal involvement by Hebert in the incident at issue. Further, plaintiffs fail to demonstrate any policy which was so deficient that the policy itself acted as a deprivation of constitutional rights. Thus, plaintiffs do not have a valid claim for violation of any constitutional rights based upon these allegations.

Accordingly, it is recommended that the motion for summary judgment on this issue be **GRANTED**, and the claims against the Sheriff in his official capacity be **DISMISSED WITH PREJUDICE**.

*State Law Claims*

Defendants assert that plaintiffs' state law claims should be dismissed with prejudice because they are related to the failed constitutional claims.

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had pendent jurisdiction. 28 U.S.C. § 1367(c)(3). Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *Darbonne v. Gaudet*, No. 03-1989, 2005 WL 1523328, *9 (W.D. La. June 22, 2005). However, the dismissal should be without prejudice. *Id*.

Thus, the undersigned recommends that the Court decline supplemental jurisdiction over plaintiffs' state law claims asserted against defendants. Those claims should be dismissed without prejudice.

**CONCLUSION**

Based on the foregoing reasons, **IT IS RECOMMENDED** that the motion for summary judgment be **GRANTED,** and all claims under 42 U.S.C. § 1983 against Sheriff Sid Hebert (the "Sheriff"), and Jeff Schmidt, Bret Broussard, Erin Ashley Irby, Jeff Matthews, Darren Bourque, Matthew Smith, Andres Gonzales, Scott Clostio, Stephen Hill, Jeremy Hatley, Joseph Nissen, and Latonya Perry be **DISMISSED WITH PREJUDICE**. It is further recommended that plaintiffs' state law claims be **DISMISSED WITHOUT PREJUDICE**.

March 10, 2009, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE